74 F.3d 932
 Fed. Sec. L. Rep. P 99,014, RICO Bus.Disp.Guide 8967,
96 Cal. Daily Op. Serv. 439,
96 Daily Journal D.A.R. 743
 SECURITIES INVESTOR PROTECTION CORPORATION, Plaintiff-Appellant,
v.
Seymour VIGMAN; Robert G. Holmes, Jr.; Aero Systems, Inc.;
Martin Blumenthal; Nettie Vigman; Jay Dash; Harriett
Dash, as personal representative of the Estate of Philip
Dash; Jack A. Haber; Habers, Inc.; Haberico Inc.;
Habers, Inc. Defined Benefit Pension Trust, Defendants-Appellees.
 No. 94-56355.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 12, 1995.
Decided Jan. 23, 1996.
 
 G. Robert Blakey, Notre Dame Law School, Notre Dame, Indiana; Mark Riera, Shepard, Mullin, Richter & Hampton, Los Angeles, California, for plaintiff-appellant.
 Jack I. Samet, Baker & Hostetler, Los Angeles, California, for defendant-appellee Robert G. Holmes, Jr.
 Steven Gourley, Gourley & Burstein, Los Angeles, California, for defendants-appellees Jack A. Haber, Habers, Inc., Haberico Inc., Habers, Inc. Defined Benefit Pension Trust.
 Appeal from the United States District Court for the Central District of California.
 Before: FARRIS and RYMER, Circuit Judges, and SINGLETON, District Judge*.
 RYMER, Circuit Judge:
 
 
 1
 This appeal requires us to decide how many bites at the apple the Securities Investor Protection Corporation (SIPC) can take.
 
 
 2
 Asserting subrogation to the rights of nonpurchasing customers of two failed broker-dealers, SIPC brought securities[1] and RICO[2] claims against Robert G. Holmes, Jr., and a cast of dozens who were accused of manipulating the stock of companies in which they had an interest. Among other manipulative devices SIPC complained about was "parking."[3]
 
 
 3
 After two unrelated trips to this circuit,[4] the district court granted summary judgment for Holmes on the ground that SIPC lacked standing as a purchaser or seller of securities, and had not shown a sufficient causal connection between Holmes's acts and the losses SIPC sought to recover. We reversed, Securities Investor Protection Corp. v. Vigman, 908 F.2d 1461 (9th Cir.1990) (Vigman III ), and then got reversed, Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). The Supreme Court held that SIPC cannot recover from Holmes under RICO because the conspirators' conduct did not proximately cause the nonpurchasing customers' injury.
 
 
 4
 On remand, SIPC asked to go forward on a parking theory that it argued had been left open by a footnote in the United States Supreme Court's opinion in Holmes. The district court did not read the footnote as controlling or the Supreme Court as having mandated reconsideration of SIPC's RICO claim on a new theory of parking independent from the scheme to manipulate. As SIPC had not pursued any such theory in any court on appeal, the district court let stand its judgment to Holmes on the RICO claim under the law of the case.
 
 
 5
 We agree that the district court had no obligation to reopen its judgment to permit SIPC to proceed on a theory of causation that it had not developed before. We have jurisdiction under 28 U.S.C. Sec. 1291, and affirm.
 
 
 6
 * As Vigman II, Vigman III and Holmes describe the facts in detail, we focus only on the procedural background that led the district court to conclude that under the law of the case, the summary judgment granted to Holmes stands.
 
 
 7
 In July 1981, SIPC sought a decree to protect the customers of First State Securities Corp. (FSSC) and Joseph Sebag, Inc. (Sebag), and two years later, brought this suit pursuant to the Securities Investor Protection Act (SIPA), 15 U.S.C. Secs. 78eee et seq., against various officers and directors (including Holmes) of six companies whose stock was allegedly manipulated, account holders at FSSC and Sebag, and insiders of FSSC and Sebag, for conspiracy in a fraudulent scheme that led to the demise of FSSC and Sebag. SIPC asserted subrogation rights to nonpurchasing customers' claims, while SIPC-appointed trustees stepped into the shoes of the broker-dealers and sued separately. Both alleged a scheme to manipulate securities in violation of Sec. 10 of the 1934 Act and Rule 10b-5, as well as RICO. As articulated by SIPC before Holmes, the scheme to manipulate comprised a number of deceptive trading practices and false statements, which artificially inflated the price of the manipulated securities. The scheme also included the "parking" of FSSC's and Sebag's inventory securities in their own customer accounts, which enabled the broker-dealer insiders to evade NASD's net capital requirements, conceal a net capital deficiency from SIPC, and keep FSSC and Sebag up and running so that the scheme could continue.
 
 
 8
 Holmes brought three motions for summary judgment in 1988, one on the RICO claim and two on SIPC's 10b-5 claims. Holmes argued that SIPC could not establish "purchaser-seller" standing or causation on any of its theories, including parking. The district court granted Holmes's motions on standing and causation grounds, holding among other things that the alleged parking transaction was not material to FSSC's financial position, and that Holmes's actions and his alleged parking transaction were not a cause of either FSSC's or Sebag's net capital deficiency.
 
 
 9
 SIPC appealed only the RICO judgment. It argued to this court that it need not have been a purchaser or seller of securities to have standing to bring a RICO claim based on predicate acts of securities fraud, and that it should not be required to show "loss causation" to support its RICO claim. As the district court had also concluded that there was a genuine issue as to whether Holmes participated in a conspiracy to manipulate the shares of the six companies, SIPC argued that even if a causal connection must be shown, it was error for the court to examine Holmes's conduct in isolation from the conduct of his coconspirators. We held that any plaintiff who is injured "by reason of" fraud in the sale of securities may sue under RICO, and that while SIPC has to establish a causal connection between the alleged predicate acts of securities fraud and the losses it seeks to recover, the district court erred in granting Holmes's motion for summary judgment based on a conclusion that his conduct alone did not proximately cause the injuries alleged.
 
 
 10
 The Supreme Court granted certiorari on whether SIPC had a right to sue under RICO. Finding causation to be "fairly included" within the question on which certiorari was granted, Holmes, 503 U.S. at 266, n. 12, 112 S.Ct. at 1317, n. 12, the Court held that proximate cause is required, assumed that Holmes would be responsible for the acts of his coconspirators, and concluded that the nonpurchasing customers, or SIPC in their stead, are not proper plaintiffs. As it stated: "In sum, subrogation to the rights of the manipulation conspiracy's secondary victims does, and should, run afoul of proximate-causation standards, and SIPC must wait on the outcome of the trustees' suit." Holmes, 503 U.S. at 274, 112 S.Ct. at 1321.
 
 
 11
 In footnote 19, however, the Court noted that SIPC had alleged in the courts below that Holmes's FSSC account had been used for parking manipulated stocks. Of this, it said:
 
 
 12
 But for the parking transactions, FSSC would allegedly have failed capital requirements sooner; would have been shut down by regulators; and would not have dragged Sebag with it in its demise. Thus, their customers would have been injured to a lesser extent. We do not rule out that, if, by engaging in the parking transactions, the conspirators committed mail fraud, wire fraud, or "fraud in the sale of securities," the broker-dealers' customers might be proximately injured by these offenses. However this may be, SIPC in its brief on the merits places exclusive reliance on a manipulation theory and is completely silent about the alleged parking scheme.
 
 
 13
 Id. at 272, n. 19, 112 S.Ct. at 1321, n. 19 (citations omitted).
 
 
 14
 SIPC has thereafter pinned its hopes on this footnote. First it asked us to review "issues that the Supreme Court left open." Without comment, we remanded to the district court "for further proceedings consistent with the opinion of the Supreme Court." Securities Investor Protection Corp. v. Vigman, 964 F.2d 924 (9th Cir.1992) (Vigman IV ). Back in the district court, SIPC moved to "confirm standing" to sue Holmes under RICO, arguing that the Supreme Court did not foreclose its RICO claim based on a parking scheme separate from the manipulation scheme. Holmes filed a cross-motion to reinstate summary judgment.[5]
 
 
 15
 Acknowledging that the Court's mandate in light of footnote 19 is not as clear as it could be, the district court relied on the procedural history of this case to hold that SIPC's RICO claim is foreclosed. It pointed out that neither the district court, nor the court of appeals, nor the parties had construed SIPC's stock parking allegations as alleging a separate scheme. In any event, the district court stated, if SIPC had predicated its RICO claim on an alleged parking scheme separate from the scheme to manipulate, it could and should have raised it on appeal. Therefore, it concluded, because its grant of summary judgment was not challenged on appeal on a separate parking theory, under the law of the case the judgment granted to Holmes on SIPC's RICO claim stands.
 
 II
 
 16
 SIPC argues that it has standing to sue Holmes for damages suffered as a result of Holmes's participation in the conspiracy to park manipulated securities and evade SIPC liquidation proceedings. Relying on footnote 19, it suggests that the Supreme Court limited the proof SIPC can advance but did not foreclose SIPC's standing to sue Holmes for RICO violations; instead, the Court left open the potential for SIPC to sue Holmes for the conspirators' purposeful activity directed toward SIPC and the securities regulatory system. SIPC posits that it and the nonpurchasing customers are the intended victims of the fraud in that Holmes and his coconspirators knew they had to keep FSSC and Sebag afloat to continue their securities manipulation scheme. For this reason, when FSSC's inventory of manipulated securities grew too large and its capital fell below the minimum net capital the regulatory system required, Holmes embarked on a stock parking scheme to defraud SIPC and NASD. This scheme, SIPC submits, created the false appearance of FSSC capital compliance, avoided a SIPC liquidation, resulted in customer claims that SIPC paid, and directly caused the failure of Sebag. Finally, as a proximate result of the conspirators' fraud on the regulatory system, SIPC urges, it was damaged because it is subrogated to FSSC and Sebag customers for their claims (which it paid), and incurred liquidation expenses advanced for FSSC and Sebag.
 
 
 17
 All of this may be so, as the Supreme Court stated in footnote 19, but it isn't what SIPC argued when it counted.
 
 
 18
 For starters, we do not read footnote 19 as saying that nonpurchasing customers of FSSC and Sebag, or SIPC itself, may now sue for a stock parking scheme. The note basically says that stock parking transactions were alluded to in the record in the district court and on appeal--and the Supreme Court can't say they might not have proximately caused injury to the broker-dealers' customers because SIPC relied only on a manipulation theory. The bottom line indicates that SIPC has not pursued the argument. Thus, we agree with the district court's conclusion that it was not mandated by the Supreme Court to reconsider its summary judgment.
 
 
 19
 SIPC further contends that when the Supreme Court notes, but does not decide an issue involved in an appeal, that issue is preserved for consideration on remand. See USA Petroleum Co. v. Atlantic Richfield Co., 13 F.3d 1276, 1278-79 (9th Cir.1994). SIPC argues that the Court's language in Holmes itself indicates that its opinion was limited: first, as the Court held that "because the alleged conspiracy to manipulate did not proximately cause the injury claimed, SIPC's allegations and the record before us fail to make out a right to sue [Holmes] under Sec. 1964(c)," and second, as the Court's order was to reverse the judgment of the court of appeals "and remand the case for further proceedings consistent with this opinion." Holmes, 503 U.S. at 276, 112 S.Ct. at 1322. SIPC also argues, correctly, that the Supreme Court did not directly decide SIPC's right to sue for injuries by reason of a stock parking scheme to defraud. But these arguments are beside the point. The question in this case is whether SIPC is bound by its silence. Except for remarking on SIPC's being "completely silent about the alleged parking scheme," id. at 272, n. 19, 112 S.Ct. at 1321, n. 19, nothing in the Supreme Court's opinion in Holmes speaks to this question.
 
 
 20
 SIPC finally submits that the Supreme Court's mandate did not require the district court to reinstate the summary judgment in Holmes's favor because it had no full and fair opportunity to present evidence to show its right to sue for a stock parking scheme to defraud. We don't disagree that the Court's mandate did not require the district court to reinstate its summary judgment. However, as we understand SIPC's point, it is that the district court should not have done so because proximate causation of a stock parking scheme was never contested in the district court, this court, or the United States Supreme Court.
 
 
 21
 As we shall explain, whether parking was a proximate cause of injury to nonpurchasing customers was at issue by virtue of Holmes's motion for summary judgment on causation. If SIPC had thought it had a separate parking scheme theory and that the district court misapprehended the nature of the parking claim in its ruling, SIPC had the opportunity to move for reconsideration. It could have argued on appeal that whether or not a sufficient causal connection existed for a manipulation scheme (that included parking), it did exist for an independent parking scheme to defraud. And it could have done the same thing in the Supreme Court, but as the Court itself notes, did not. We are therefore left with two possibilities: either the parking scheme is an afterthought, bootstrapped through footnote 19, or it was there all the time, but abandoned. Regardless, it is no longer available to SIPC to argue that proximate causation was not fairly included within the question on which the Supreme Court granted certiorari. The Court explicitly held that proximate causation was within the question, that SIPC briefed the proximate cause issue, and that SIPC recognized that the Court might reach it. Holmes, 503 U.S. at 266, n. 12, 112 S.Ct. at 1317, n. 12. We therefore are not persuaded to reverse on the ground that SIPC lacked a "full and fair opportunity" to make its case for a parking scheme.
 
 
 22
 Beyond these points, SIPC's argument slips over to the merits. It analogizes to a number of opinions where RICO standing has been recognized, see, e.g., Taffet v. Southern Co., 930 F.2d 847 (11th Cir.1991), rev'd on other grounds, 967 F.2d 1483 (11th Cir.1992); County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295 (2d Cir.1990); Matter of EDC, Inc., 930 F.2d 1275 (7th Cir.1991), and Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740 (5th Cir.1989), and argues that the scheme of Holmes and his coconspirators to defraud the securities regulatory system similarly confers standing on SIPC. In this connection it offers a number of links between parking and damage to customers, who could not get their cash and securities, and between the increase in SIPC's liability to customers and for liquidation expenses. We do not consider these points on the merits, however, because they are outside the scope of the issues raised on appeal. The only issue that SIPC has posed is whether the district court erred in refusing to consider its parking scheme evidence since the proximate cause element of SIPC's right to sue for RICO violations arising out of a stock parking scheme to defraud had not previously been challenged. Accordingly, we express no opinion on whether such a theory could ever be viable in light of Holmes.
 
 
 23
 We conclude that the district court did not err in concluding that the mandate of the Supreme Court did not require revisiting or reopening its summary judgment.
 
 III
 
 24
 On essentially the same grounds, SIPC argues that the district court inappropriately invoked the law of the case doctrine. Again relying on footnote 19, SIPC contends that the Supreme Court's mandate was "strictly limited" to SIPC's standing to sue Holmes for the conspirators' stock manipulation and did not foreclose SIPC's right to sue Holmes for the conspirators' stock parking scheme to defraud. As neither the district court, this court, nor the Supreme Court ever decided SIPC's right to sue for injury to its business or property by reason of the stock parking scheme to defraud, SIPC maintains that the district court's ruling means that it would have had to defeat every conceivable argument Holmes might have made on summary judgment. Because Holmes never challenged SIPC's right to sue on this theory, SIPC concludes, the district court's judgment on remand has to be reversed to allow it to present evidence at trial. We disagree.
 
 
 25
 A court is "generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case." Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 715 (9th Cir.1990). For the law of the case doctrine to apply, the "issue in question must have been 'decided explicitly or by necessary implication in [the] previous disposition.' " Id. (citations omitted). It is also clear, however, that "a party cannot revisit theories that it raises but abandons...." USA Petroleum Co., 13 F.3d at 1284. By the same token, a party cannot offer up successively different legal or factual theories that could have been presented in a prior request for review. Id. at 1284, and 1290 (Alarcon, J., specially concurring).
 
 
 26
 We have carefully reviewed the entire record and we agree with the district court that a direct victim theory of causation having to do with a separate parking scheme to defraud was either subsumed within its summary judgment on causation, and thus is law of the case, or abandoned on appeal, and therefore is waived.
 
 
 27
 Holmes's motion for summary judgment on causation went to all claims brought against him by SIPC. His motion papers specifically argued that SIPC's claim that Holmes's fraudulent parking of Bunnington stock directly impaired the net capital of FSSC was deficient as a matter of law. SIPC's response identified parking as one instance of Holmes's providing assistance to coconspirators in connection with the manipulation of Bunnington stocks. The district court held that neither Holmes's conduct nor parking proximately caused FSSC's net capital deficiency. Implicitly, it held that neither Holmes's conduct nor parking caused the broker-dealer's failure as it was net capital deficiency that caused SIPC to pull the plug. This ruling, in turn, was explicitly adopted in connection with the court's summary judgment on the RICO claim. Nor does paragraph 8 of the district court's order on the RICO claim somehow undo that causation ruling and count as a win for SIPC, as SIPC contends. The district court concluded in paragraph 8 that a triable issue of fact exists as to whether the alleged "predicate acts" did not "cause" the injuries alleged. But this ruling is entirely consistent with the proximate causation ruling, for the "predicate acts" presumably refer to the acts of the coconspirators and not necessarily to Holmes's conduct in isolation, and in any event, "cause," as we have previously intimated, refers to actual causation, not proximate causation. See Vigman III, 908 F.2d at 1465.
 
 
 28
 We held that the district court correctly determined that "the SIPC and the trustees must establish a causal connection between the alleged predicate acts of securities fraud and the losses they seek to recover." Id. at 1468. But we reversed because the district court had concluded in addition that there was a genuine issue for trial as to whether Holmes participated in a conspiracy to manipulate stock, and thus erred in considering only Holmes's conduct instead of also considering whether coconspirators caused the alleged injuries. Id.
 
 
 29
 The Supreme Court solved this problem by assuming that we correctly held that Holmes can be held responsible for the acts of his coconspirators, Holmes, 503 U.S. at 264, n. 6, 112 S.Ct. at 1315-16, n. 6. It then held that the conspirators in the stock manipulation scheme were connected to the injuries suffered by nonpurchasing customers only by the intervening insolvency of the broker-dealers. Thus, the Court held, subrogation to the rights of the conspiracy's secondary victims runs afoul of proximate-causation standards.
 
 
 30
 As we see it, this left the district court's summary judgment on causation intact. To the extent that parking was part of the scheme to manipulate, proximate causation is lacking under the law of the case. To the extent that parking was a separate scheme to defraud, it is waived.
 
 
 31
 As the district court observed in its memorandum of decision and order on remand, neither it, nor so far as it could tell, this court or the parties, construed SIPC's stock parking allegations as alleging a separate scheme apart from the manipulation scheme. It doesn't matter that the Supreme Court may have characterized the parking allegations separately in footnote 19, since SIPC was silent on this score.
 
 
 32
 We cannot say it better than Judge Tashima:
 
 
 33
 It was SIPC's choice to decide what theory or theories to pursue on appeal. However, it gets only one opportunity to appeal from any one judgment. SIPC never pursued in any court the theory created for it by footnote 19 that its RICO claim might find predicate support in a parking scheme. If SIPC truly had predicated its RICO claim, even in part, on an alleged parking scheme, it should have raised it on appeal so that the courts on appeal could address it. It did not. A party who appeals from a judgment once on one theory and loses cannot on remand relitigate the same claim on a new theory.
 
 
 34
 We therefore conclude that SIPC cannot have another bite at the apple.
 
 IV
 
 35
 Three other alleged co-conspirators, Seymour and Nettie Vigman and Martin Blumenthal, joined in Holmes's motion and incorporated his papers by reference. SIPC faults the summary judgment entered in their favor because they failed to provide the court or SIPC with notice of the basis for the relief they sought and didn't meet their burden under Fed.R.Civ.P. 56. As the district court had no difficulty with this procedure, and Holmes's papers were adopted by the Vigmans and Blumenthal, we see no reason to reverse the summary judgment in their favor.
 
 
 36
 AFFIRMED.
 
 
 
 *
 Honorable James R. Singleton, United States District Judge for the District of Alaska, sitting by designation
 
 
 [1]
 Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. Sec. 240.10b-5
 
 
 [2]
 The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Secs. 1961-68
 
 
 [3]
 Stock "parking" is a mechanism used to evade the net capital requirements of the National Association of Securities Dealers (NASD). When a brokerage firm files the required monthly report with the NASD regarding its net capital condition, it must discount (or take a "haircut" on) the value of any stock it holds in its own account. To reach technical compliance with its net capital requirements, a brokerage firm "sells" stock from its own account to a customer at market price. This avoids the discount for reporting purposes. Once the brokerage firm has filed its report with the NASD and met its net capital requirement, it then "buys" the shares back from the customer, usually at the same price at which it "sold" the stock, plus interest. Securities Investor Protection Corp. v. Vigman, 908 F.2d 1461, 1464-65, n. 4 (9th Cir.1990)
 
 
 [4]
 We had previously reversed the district court's dismissal of several defendants for lack of personal jurisdiction and proper venue, Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309 (9th Cir.1985) (Vigman I ), and its dismissal of SIPC's securities law claims against Holmes for lack of purchaser-seller standing. Securities Investor Protection Corp. v. Vigman, 803 F.2d 1513 (9th Cir.1986) (Vigman II )
 
 
 [5]
 Jack A. Haber, who was a director of another of the six companies, Creditbank, and several Haber entities who allegedly allowed others to park stock in their accounts, separately moved for summary judgment since the case as to them had been stayed pending resolution of Holmes's appeal. We treat their arguments on this appeal as being made by Holmes, except where a point is germane only to Haber