Denny Lee LONDON, Plaintiff-Appellant,

v.

COOPERS & LYBRAND,
Defendant-Appellee.

No. 79–3159.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1981.

Decided May 7, 1981.

Rehearing and Rehearing En Banc
Denied July 9, 1981.

Nancy Kelso, Kelso & Young, Los Angeles, Cal., for plaintiff-appellant.

Cynthia H. Plevin, San Francisco, Cal., for defendant-appellee.

Before GOODWIN and ANDERSON, Circuit Judges, and MURPHY,* Senior District Judge.

**J. BLAINE ANDERSON, Circuit Judge:**

Denny Lee London appeals the dismissal of her Second Amended Complaint, and concurrent dismissal of her action below, charging the defendant Coopers & Lybrand with unlawful employment discrimination. We affirm in part and reverse in part.

## I. BACKGROUND

The background to this appeal illustrates once again the burden which the failure of Congress to provide clear guidelines on the question of limitations periods for private enforcement of federal civil rights statutes places upon litigants, administrative agencies, and the courts. The delay and uncertainty engendered by the confusion arising from overlapping remedies and procedures benefits neither of the parties before us.

London was discharged by Coopers & Lybrand, an accounting firm, from her position as a junior accountant on September 25, 1974. She filed an employment discrimination charge with the Equal Employment Opportunity Commission on July 7, 1975. In that charge, she alleged that her discharge violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The E.E.O.C. referred London's charge to the California Fair Employment Practices Commission, which apparently failed to effect a conciliation between the parties. On approximately July 21, 1978, London received a "right to sue" letter from the E.E.O.C.

On July 25, 1978, London filed a civil complaint in federal district court in which she charged Coopers & Lybrand with sex and national origin discrimination under Title VII, and also charged that her termination violated the Civil Rights Act of 1866, 42 U.S.C. § 1981. London is a naturalized citizen of Chinese descent. In her prayer for relief, London sought compensatory and punitive damages and an order directing Coopers & Lybrand to reinstate her to her former position with all rights and benefits.

After London filed a First Amended Complaint, Coopers & Lybrand moved to dismiss, primarily on the ground that both London's Title VII and § 1981 claims were time-barred. In a terse order filed December 26, 1978, the district court dismissed London's First Amended Complaint, and granted her 10 days to file an amended complaint. In her Second Amended Complaint, London offered no allegations under Title VII, but instead alleged a cause of action arising under § 1981, and a pendent state claim arising under California Labor Code § 1420.

The Second Amended Complaint expanded considerably upon the allegations set forth in London's first two complaints, and included allegations relating to allegedly discriminatory conduct taking place after she filed her initial complaint with the E.E.O.C. Paragraph 7 of that complaint alluded to four instances of post-discharge discrimination on the part of Coopers & Lybrand:

(1) On November 7, 1977, London discovered the existence of two negative performance reports prepared prior to her discharge which were not revealed to her, allegedly in violation of company policy. According to London, the concealment of the existence of these reports "deluded" her into representing to potential employers that her performance at Coopers & Lybrand had been satisfactory, while employers were instead receiving negative performance reports.

(2) Coopers & Lybrand made other employers aware, in some unspecified manner, that London had been terminated because she was a "troublemaker."

(3) In September or October, 1976, Coopers & Lybrand sent an unsolicited letter to the University of Southern

---

* The Honorable Thomas F. Murphy, Senior United States District Judge for the Southern District of New York, sitting by designation.

California Graduate School of Business Administration, where London was then a student, informing the school's placement office that she had filed the E.E.O.C. charge.

(4) Coopers & Lybrand informed several other accounting firms that London had filed with the E.E.O.C.

Coopers & Lybrand filed a motion to dismiss the Second Amended Complaint. On February 6, 1979, the district court granted Coopers & Lybrand's motion, and on February 14, 1979, entered an order dismissing London's action. The court dismissed London's Title VII action because she had failed to amend her complaint as to Title VII, and dismissed both the § 1981 and California state claim with prejudice. This appeal followed.

## II. DISCUSSION

### A. Title VII

■ We note at the outset that London must be deemed to have waived her Title VII cause of action by failing to allege 42 U.S.C. § 2000e as a ground for relief in her Second Amended Complaint, even though both parties have briefed on appeal the question whether London's initial filing with the E.E.O.C. was timely. It has long been the rule in this circuit that a plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint. *See Sacramento Coca-Cola Bottling Co. v. Chauffeurs, Etc., Local 150*, 440 F.2d 1096 (9th Cir.), *cert. denied*, 404 U.S. 826, 92 S.Ct. 57, 30 L.Ed.2d 54 (1971); *Loux v. Rhay*, 375 F.2d 55 (9th Cir. 1967); *Bullen v. De Bretteville*, 239 F.2d 824 (9th Cir. 1956), *cert. denied sub nom. Treasure Company v. Bullen*, 353 U.S. 947, 77 S.Ct. 825, 1 L.Ed.2d 856 (1957). We are well aware that other circuits do not look with favor upon this rule, *see e. g., Wilson v. First Houston Investment Corp.*, 566 F.2d 1235, 1238 (5th Cir. 1978), *vacated and remanded on other grounds*, 444 U.S. 959, 100 S.Ct. 442, 62 L.Ed.2d 371 (1979), but we as a panel are not at liberty to re-examine its validity.

When the district court dismissed London's cause of action under Title VII, it did so because London failed to amend as to Title VII in her Second Amended Complaint. The court acted properly in doing so according to the Ninth Circuit rule. Our sole concern thus is the timeliness of London's complaint under § 1981.

### B. Equitable Tolling

■ The California statute of limitations applicable to § 1981 is Cal.Code Civ.Pro. § 338(1), which prescribes a three-year limitation period for actions based on liability created by statute. *Bratton v. Bethlehem Steel Corp.*, —— F.2d —— (9th Cir., Sept. 29, 1980). London has alleged a discharge which occurred approximately four years prior to the filing of her complaint, and several post-discharge actions on the part of Coopers & Lybrand which would appear to have been taken less than three years prior to filing. We must determine which, if any, of these charges of allegedly discriminatory actions is now time-barred by § 338(1).

■ London argues first that as to the charge that she was terminated for discriminatory reasons, the statute of limitations should be tolled during the pendency of her administrative complaint before the California Fair Employment Practices Commission. London acknowledges the principle of *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), that the filing of an administrative complaint with the E.E.O.C. does not toll the running of the statute of limitations on a cause of action under § 1981 based on the same facts. She urges us to apply a different rule, however, to a charge filed with a state administrative agency whose mission is the processing of employment discrimination complaints. She cites to California decisions such as *Jones v. Tracy School District*, 27 Cal.3d 99, 611 P.2d 441, 165 Cal. Rptr. 100 (1980), and *Elkins v. Derby*, 12 Cal.3d 410, 525 P.2d 81, 115 Cal.Rptr. 641 (1974), which apply an "equitable tolling" principle holding that any state statute of limitations is tolled where the plaintiff is

pursuing an administrative remedy for the same alleged wrongdoing.

We do not agree with London that California's "equitable tolling" principle is applicable under the circumstances of this case. While state tolling principles are applicable in § 1981 cases where "not inconsistent" with the constitution or federal law, *see Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Conerly v. Westinghouse Corp.*, 623 F.2d 117 (9th Cir. 1980); we conclude that application of the California equitable tolling rule here would be inconsistent with federal law.

London correctly points out that there was no state tolling principle available in *Johnson*. That factor standing alone, however, does not distinguish the present case from *Johnson*. The holding in *Johnson* was based upon the independence of the separate remedies afforded by Title VII and § 1981. As the Court noted in *Johnson*:

> " . . . the fundamental answer to petitioner's argument lies in the fact—presumably a happy one for the civil rights claimant—that Congress clearly has retained § 1981 as a remedy against private employment discrimination separate from and independent of the more elaborate and time-consuming procedures of Title VII. Petitioner freely concedes that he could have filed his § 1981 action at any time after his cause of action accrued; in fact, we understand him to claim an unfettered right so to do. Thus, in a very real sense, petitioner has slept on his § 1981 rights. The fact that his slumber may have been induced by faith in the adequacy of his Title VII remedy is of little relevance inasmuch as the two remedies are truly independent."

421 U.S. at 465, 466, 95 S.Ct. at 1722, 1723.

Other circuits have generally refused to toll the limitation period for causes of action arising under federal civil rights statutes on the basis of administrative filings with state agencies. *See Daughtry v. King's Department Stores*, 608 F.2d 906 (1st Cir. 1979) (Title VII and § 1981); *Everson v. McLouth Steel Corp.*, 586 F.2d 6 (6th Cir.

1978) (180-day filing period under Title VII); *Warner v. Perrino*, 585 F.2d 171 (6th Cir. 1978) (interference with fair housing rights action based upon § 1981, 42 U.S.C. §§ 1982 and 3617). A district court within our circuit has declined to toll the California limitations period during the pendency of a state administrative action on a discrimination charge. *See Vogel v. Torrance Board of Education*, 447 F.Supp. 258 (C.D.Calif. 1978).

We reject London's tolling theory squarely under the principles of *Johnson*. Under 42 U.S.C. § 2000e–5, deferral to a state agency for conciliation attempts represents an integral part of the Title VII enforcement mechanism. For the individual complainant residing in a "deferral" state, the initial pursuit of state administrative remedies is a mandatory step in the process of obtaining relief under Title VII. Given *Johnson's* admonition that the independence of Title VII and § 1981 as separate civil rights remedies must be strictly maintained, we cannot say that we are at liberty to toll the statute of limitations here. What the Sixth Circuit said in the context of § 1982 applies with equal force to § 1981:

> "We may not rationally read into . . . [the statute] an intention on the part of Congress to delay the enforcement of the statute for the purpose of settling other claims which arise under other laws."

*Warner v. Perrino*, 585 F.2d at 176. Whether pursuit of a truly independent state administrative remedy in a nondeferral state might be an appropriate circumstance for tolling the statute of limitations is an issue we do not decide here. Accordingly, we hold that the running of the statute of limitations of London's claim of discriminatory discharge was not tolled during the pendency of her administrative claim before the California Fair Employment Practices Commission.

### C. *"Continuing Violation"*

London offers a second theory to save her action from the time bar of the California limitations period. She argues that her complaint alleges a "continuing violation"

of the civil rights statutes insofar as it alleges that Coopers & Lybrand continues to harass her with adverse references and reports that she is a "troublemaker." We agree with London that her allegations of discriminatory post-discharge conduct must survive a motion to dismiss; however, we do not agree that her complaint has stated a "continuing violation" of § 1981 as that term has come to be applied in the federal courts. Rather, we sustain that portion of her complaint dealing with post-discharge conduct because she has therein stated a violation of § 1981 separate and apart from her allegation that she was discharged for discriminatory reasons. Accordingly, we affirm the dismissal of London's charge of discriminatory discharge and will remand for further proceedings dealing with her post-discharge harassment allegations and her pendent state claim.

■ For the purposes of our discussion here, we separate London's allegations into two categories: first, the allegation of a discriminatory discharge as a separate category to itself, and second, the allegations of a pattern of discriminatory post-discharge conduct. As noted earlier, the allegation of a discriminatory discharge on its face falls outside the limitation period, while the allegations of post-discharge conduct appear to fall within the limitations period.[1]

■ Addressing ourselves first to the issue of whether London's allegations of a continuing pattern of post-discharge conduct rescue the claim of discriminatory discharge from the statute of limitations, we conclude that London's termination was a separate, discrete act whose effects do not continue into the present for the purposes of the "continuing violation" doctrine. As

the Supreme Court has repeatedly advised us, our focus in determining whether an alleged civil rights violation is "continuing" is upon the issue whether a present *violation* still exists, not upon the present effect of a past employment decision. · See *Delaware State College v. Ricks,* —— U.S. ——, ——, 101 S.Ct. 498, 504, 66 L.Ed.2d 431, 440 (1980); *United Air Lines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Absent special circumstances, a single act by an employer adverse to an employee's interests, such as a discharge, layoff, or failure to transfer or promote, begins the running of the statute of limitations and the natural effects of the allegedly discriminatory act are not regarded as "continuing." *See, e. g., Nuss v. Pan Am. World Airways, Inc.,* 634 F.2d 1234 (9th Cir. 1980); *Collins v. United Air Lines, Inc.,* 514 F.2d 594 (9th Cir. 1975); *Griffin v. Pacific Maritime Association,* 478 F.2d 1118 (9th Cir.), *cert. denied,* 414 U.S. 859, 94 S.Ct. 69, 38 L.Ed.2d 109 (1973); *Fowler v. Birmingham News Co.,* 608 F.2d 1055 (5th Cir. 1979).

We see no special circumstances justifying a departure from the rule in this instance. While the adverse job references obviously would not have occurred but for London's termination, they are not the sort of consequences which mutually and inevitably flow from a termination. They represent a separate form of alleged employment discrimination whose consequences would be different from those suffered as a result of a simple discharge. We hold that London's claim of discriminatory discharge is time-barred.

Turning to the question of whether London's allegations of post-discharge conduct

---

1. We leave it to the district court on remand to determine whether any of the individual allegations of discriminatory post-discharge conduct are barred by the statute of limitations. A defendant may raise the time bar of the statute of limitations by motion to dismiss only if it is obvious on the face of the complaint that the claim is time-barred, or if affidavits accompany the motion. *See, e. g., Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980). We cannot tell from the face of the complaint whether any of the allegations of post-dis-

charge conduct would be time-barred, and no affidavits on the subject appear in the record. ·Consequently, our holding here is limited to a determination that the complaint's bare allegations of post-discharge discrimination are sufficient to withstand a motion to dismiss on the ground that the statute of limitations applies. We do not mean to foreclose the district court from considering whether any specific allegation is time-barred on the basis of facts which are not before us now.

are cognizable, we observe that we now deal more with an issue of substantive law under § 1981 than with a purely procedural matter of statutes of limitations. As the parties have framed the issue on appeal, we must determine whether the allegations of London's complaint state a violation of § 1981. We heed the admonition of the United States Supreme Court that a complaint should not be dismissed for failure to state a claim "... unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 46, 78 S.Ct. 99, 101, 102, 2 L.Ed.2d 80 (1957).

Paragraph Seven of the Second Amended Complaint [2] alleges, in effect, two types of discriminatory conduct. Allegations of the preparation and dissemination of negative performance reports, and of informing other accounting firms that London was a "troublemaker" involve the giving of adverse employment references to potential employers. Allegations that Coopers & Lybrand had informed both the U.S.C. placement office and potential employers that London had filed discrimination charges involve retaliation for filing such charges. We must consider whether either class of activities is cognizable under § 1981.

■ There is little question that the dissemination of adverse employment references can constitute a violation of Title VII if motivated by discriminatory intent. In *Shehadeh v. Chesapeake & Potomac Tel. Co.*, 595 F.2d 711 (D.C.Cir.1978), the court held that the giving of adverse references to potential employers can constitute a violation of § 703(a)(1) of Title VII, 42 U.S.C. § 2000e–2(a)(1).[3] The *Shehadeh* majority noted that:

"A former employer is solidly in position to impede a prior employee's reentry into the job market. When that influence is

2. We set out that paragraph in its entirety:

"Plaintiff was employed by the Defendant from January, 1974 until September 25, 1974, when she was terminated solely because of her sex, race, and national origin, and in retaliation for her opposition to the unlawful employment practices of the Defendant. The effects of the discrimination continue to be present. Furthermore, the Defendant continued to discriminate against Plaintiff, and to retaliate against her for her opposition to its unlawful employment practices at least until the fall of 1976, including, but not limited to, the following:

"a. Contrary to company policy and representations made to Plaintiff, a negative performance report was prepared and signed on January 13, 1975, almost four months after Plaintiff's termination. Plaintiff did not discover the existence of that report until November 7, 1977, when she also discovered the existence of another negative performance report prepared September, 1974, but not shown to her, contrary to company policy. As a result of this circumvention of company policy, Plaintiff was deluded into representing to potential employers that her performance reports while at Coopers & Lybrand had been satisfactory whereas the Defendants would represent that her two final performance reports had been unsatisfactory.

"b. Defendant made other employers, and, in particular, other 'big eight' accounting firms, aware that Plaintiff had been terminated because she was a 'troublemaker'

and that she had complained of discrimination while at Coopers & Lybrand.

"c. In the fall of 1976, Plaintiff was attending the Graduate School of Business Administration at the University of Southern California. Defendant was aware that Plaintiff was in attendance at the University of Southern California, because one of its partners had taught a class attended by Plaintiff. In September or October, 1976, Defendant sent an unsolicited letter to the Placement Center at the Graduate School of Business Administration, advising it that Plaintiff had filed a charge of discrimination against Defendant.

"d. Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission and with the State of California Fair Employment Practices Commission on July 7, 1975. Subsequently, Defendant informed other accounting firms that Plaintiff had filed such charges, thus making it more difficult for Plaintiff to find employment with another accounting firm."

3. Section 703(a)(1) reads as follows:

"(a) It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin...."

42 U.S.C. § 2000e–2(a)(1).

exerted to limit employment opportunities on grounds of 'race, color, religion, sex, or national origin,' an evil at which Section 703(a)(1) is unequivocally aimed materializes."

595 F.2d at 722. *Shehadeh* thus recognized that employment discrimination can be effectively practiced by a former employer who, with the intent to discriminate, sets out to give a former employee a bad name in the job market. *See also E.E.O.C. v. Western Publishing Co., Inc.,* 502 F.2d 599 (8th Cir. 1974); *Daley v. St. Agnes Hospital, Inc.,* 490 F.Supp. 1309 (E.D.Pa.1980); *Tarvesian v. Carr Division of TRW, Inc.,* 407 F.Supp. 336 (D.Mass.1976); *cf. E.E.O.C. v. United States Fidelity & Guaranty Co.,* 414 F.Supp. 227 (D.Md.1976). *But see Moore v. Bank of New Orleans,* 12 F.E.P. Cas. 1566 (E.D.La.1975). In at least one instance, the dissemination of adverse employment references has been held to violate § 704(a), 42 U.S.C. 2000e–3, which prohibits *inter alia* any action taken in retaliation against the filing of a charge of employment discrimination. *Rutherford v. American Bank of Commerce,* 565 F.2d 1162 (10th Cir. 1977). *Cf. Pantchenko v. C. B. Dolge Co.,* 581 F.2d 1052 (2d Cir. 1978) (failure to give *any* employment reference).

We have located only one decision holding that the giving of adverse references by a former employer can violate § 1981. In *Moore v. Bank of New Orleans, supra,* the court reasoned that:

"[1981] was passed to protect the right to contract. If plaintiff's allegations are true, then her right to contract with other employers has been interfered with by the defendant because of her race. Such action is within the purview of § 1981, . . . ."

12 F.E.P.Cas. at 1568.

■ We find the reasoning in *Moore* to be persuasive. § 1981, by its terms, is de-

signed· to protect the right to make and enforce contracts, a right which encompasses freedom from employment discrimination. *E. g., Johnson v. Railway Express, supra.* By providing an adverse employment reference with the intent to discriminate on racial grounds, a former employer actively interferes with a job applicant's right to enter into an employment contract, and may utilize the unwitting assistance of an otherwise innocent third party in its plan to discriminate. The giving of adverse references under such circumstances is contrary to the letter, policy, and spirit of § 1981.

■ We are also persuaded by the cases cited earlier holding that adverse references may violate 42 U.S.C. § 2000e–2(a)(1). The guarantees of § 1981 and Title VII against racial discrimination are coextensive, and neither is greater or lesser than the other in scope. *See, e. g., Carrion v. Yeshiva University,* 535 F.2d 722, 729 (2d Cir. 1976).

■ In the present case, we find that London has adequately alleged a pattern of racially discriminatory conduct which would be violative of § 1981 if proven.[4] While the complaint here is not a textbook example of an employment discrimination pleading, we do not believe that under no set of facts can London prove her charge of discrimination. She has pled that each was a continuation of Coopers & Lybrand's previous discriminatory conduct, an allegation which can be fairly read as contending that the actions were taken with the intent to discriminate. Moreover, these are the kinds of actions which we. can fairly infer have caused London damage. In paragraph 7(d) of the complaint, London makes it clear that she has experienced considerable difficulty in finding employment with another firm. While the complaint could stand some clarifica-

---

4. We believe that London's allegation that she is of Chinese descent is sufficient to confer standing upon her to sue for racial discrimination under § 1981. She has alleged that she is a member of a distinct racial minority, and that she has been subjected to discriminatory treatment. § 1981 was meant, in broad terms, to proscribe discrimination in the making of or

enforcement of contracts against, or in favor of, any race. *See McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 295, 96 S.Ct. 2574, 2585, 49 L.Ed.2d 493 (1976). We do not base our holding upon any notion that § 1981 prohibits discrimination on the basis of national origin, and we express no opinion on the validity of such a theory.

tion, it is not so deficient as to be subject to a dismissal motion.

Turning to London's charge of retaliatory conduct, we find a split of authority on the question of whether retaliation for the filing of an employment discrimination charge can constitute a violation of § 1981. According to *Tramble v. Converters Ink Company*, 343 F.Supp. 1350 (N.D.Ill.1972), such retaliatory conduct cannot be regarded as a violation of § 1981 because the filing of a discrimination charge with the E.E.O.C. may raise issues of sex, religion, or national origin discrimination, while § 1981 prohibits only racial discrimination. 343 F.Supp. at 1354. *See also Takeall v. WERD, Inc.*, 23 F.E.P.Cas. 947 (M.D.Fla.1979); *Grant v. Bethlehem Steel Corp.*, 22 F.E.P.Cas. 680 (S.D.N.Y.1978), *aff'd on other grounds*, 622 F.2d 43 (2d Cir. 1980); *Hudson v. I.B.M.*, 22 F.E.P.Cas. 947 (S.D.N.Y.1975), *aff'd on other grounds*, 620 F.2d 351 (2d Cir. 1980), *U.S. App. Pndg.* Other decisions, however, suggest that retaliatory measures are violative of § 1981. *See Crawford v. Roadway Express, Inc.*, 485 F.Supp. 914 (W.D.La.1980); *Garcia v. Rush-Presbyterian Medical Center*, 80 F.R.D. 254 (N.D.Ill.1978). Though *Garcia* did not address specifically the question of retaliation for filing an E.E.O.C. charge, it did distinguish *Tramble* on the basis that *Tramble* did not involve a claim that the retaliatory measures taken there were motivated by a discriminatory intent. The court noted that:

> "[In *Tramble*] the court recognized that finding that section 704(a) had been violated would not compel the conclusion that § 1981 had also been violated. But neither are the two provisions mutually exclusive in terms of the conduct they prohibit. Presumably, where the employer discharges an employee for protesting discrimination against a co-worker on the basis of sex or religion, the employee could not bring a claim under § 1981, although a valid section 704(a) claim could be made. But where, as here, the retaliation is alleged to have been motivated by racial discrimination, albeit against others than plaintiff, and that

retaliation harms plaintiff, a § 1981 claim can be stated."

80 F.R.D. at 266.

■ While we are not prepared to hold that retaliation for the filing of *any* charge with the E.E.O.C. will violate § 1981, we do hold that where, as here, a plaintiff charges an employer with racial discrimination in taking retaliatory action, a cause of action under § 1981 has been stated. If an employer retaliates against the former employee with the intent to perpetuate the original act of discrimination, or with some other racially discriminatory motive in mind, then interference with rights protected by § 1981 has occurred, and that section must come into play. While we again do not mean to hold London's complaint up as a model for future civil rights litigants, we conclude that she has adequately pled retaliation, discrimination, and injury.

### III. *CONCLUSION*

The district court properly dismissed all of London's claims under Title VII, and her claim of discriminatory discharge under 42 U.S.C. § 1981. It erred in dismissing at this stage London's claims of discriminatory post-discharge conduct.

The district court dismissed London's pendent state claim under California Labor Code § 1420 when it dismissed her first cause of action. Because we hold that London's first cause of action survives in part, we also remand for further consideration of her § 1420 claim. We express no opinion whatever on the merits of the cause of action alleged under California state law.

AFFIRMED in part and REVERSED and REMANDED in part for further proceedings. No costs are allowed on this appeal.