IMAGINEERING, INC., a Washington corporation; Knighten Bros. Construction, Inc., a Washington corporation, individually and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

KIEWIT PACIFIC COMPANY, a Delaware corporation; Kiewit Construction Company, a Delaware corporation; and Peter Kiewit Sons', Inc., a Delaware corporation, Defendants–Appellees.

No. 91–35970.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 18, 1992.

Decided Oct. 7, 1992.

Richard T. Colman, Michael Hennigan and Robert B. Ericson, Howrey & Simon, Los Angeles, Cal., for plaintiffs-appellants.

Irwin H. Schwartz and Sheryl Gordon McCloud, Seattle, Wash., for defendants-appellees.

Before: WRIGHT, BEEZER, and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

This case involves an appeal from the district court's dismissal of the plaintiffs' complaint for failure to state a claim. 759 F.Supp. 1498. Fed.R.Civ.P. 12(b)(6). A plaintiff class of minority and woman-owned business enterprises ("MWBEs") appeal the dismissal of its action against Kiewit Pacific Company, Kiewit Construction Company, and Peter Kiewit Sons', Inc. ("Kiewit"), who are prime contractors, challenging an alleged scheme to evade federal and state regulations requiring prime contractors to employ MWBEs on public works construction projects by using phony MWBEs to create the appearance of compliance with the set-aside regulations. Plaintiffs alleged that the scheme violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, certain sections of the Civil Rights Act, 42 U.S.C. §§ 1981, 1982, and 1984, and Washington state law.

## FACTUAL AND PROCEDURAL BACKGROUND

Federal, state, and local set-aside regulations set forth required levels of participation by MWBEs on public works construction contracts awarded to prime contractors. Prime contractors secure the required MWBE participation by subcontracting work to qualified MWBEs or by entering a joint venture agreement with one or more MWBE. In fact, prime contractor bids must include a list of MWBE subcontractors or joint venture partners and a description of the type and dollar amount of work that the MWBE will perform if its bid is selected. The successful bidder receives a Condition of Award letter that makes the participation of the designated MWBEs a condition of the contract between the successful bidder and the government agency.

According to the plaintiffs, the Kiewit defendants developed and used a conduit scheme to avoid complying with the set-aside regulations that, nevertheless, caused it to appear they were in compliance. Plaintiffs alleged that the Kiewit defendants regularly employed Global Consultants/Construction ("Global") and Seaway Construction, Inc. ("Seaway"), both of which were certified as minority business enterprises ("MBEs") and woman business enterprises ("WBEs"), to act as "conduits," "fronts," or "pass-throughs." As alleged in the amended complaint, a "conduit" is an MWBE that agrees to be named as a subcontractor but does not perform the subcontract in a commercially meaningful manner. The work actually is performed by the prime contractor. A "front" is a company that purports to be an MWBE, but is not. A front appears to be an MWBE through trust agreements or similar arrangements. A "pass-through" is an MWBE subcontractor that buys goods to be counted toward fulfillment of MWBE goals. Often, conduits, fronts, and pass-throughs (collectively "conduits") do not earn a legitimate profit. Rather, the fees paid through these arrangements are much smaller than the profits that legitimate MWBEs could earn on the projects.

In their original complaint, the plaintiffs sought damages under RICO on behalf of themselves and the broad class of all MWBEs (except those acting in concert with the Kiewit defendants) certified in the construction trades at any time after January 1, 1982. The district court dismissed the complaint because plaintiffs lacked statutory standing, as alleged in the complaint, to bring the case as a RICO action. The complaint was dismissed without prejudice and with leave to refile with alternative claims. Plaintiffs, however, filed a motion to alter the judgment to permit

them to file amended RICO claims, which the district court granted.

In the amended complaint, plaintiffs alleged that the set-aside regulations require projects to be awarded only to prime contractors who complied with the regulations; and that each named plaintiff was an MWBE subcontractor for the lowest complying contractor on at least one project improperly awarded to Kiewit. The amended complaint was limited to the class of MWBEs that were identified as subcontractors by the lowest bidding prime contractors not listing Global Consultants/Construction or 3A Industries as an MWBE subcontractor or joint venture partner on certain identified projects.

According to the amended complaint, Imagineering, Inc., a WBE engaged in the business of structural metal fabrication, was designated as a WBE on the West Seattle Low Bridge project by Guy F. Atkinson Construction Company, which was the lowest complying prime contractor on that project. Nevertheless, the project was awarded to Kiewit–Global, a joint venture that purported to satisfy the set-aside regulations by including a front as a joint venture partner. Similarly, the complaint alleged that Knighten Brothers, a MBE certified to perform excavation, concrete and pipeline work, was designated as an MBE on the Cedar Falls Dam project by prime contractor Morrison–Knudsen. Apparently, Morrison–Knudsen finished second in the final bidding to Kiewit. Imagineering and Knighten Brothers made an offer of proof that they had submitted bids to the lowest complying contractors on these projects.

Because they allegedly lost the profits that they would have earned on these projects due to Kiewit's unlawful use of the conduit scheme, Imagineering and Knighten Brothers filed this action seeking relief under RICO, the Civil Rights Act and Washington state law. The plaintiff MWBEs charge that Kiewit implemented, perpetrated, and concealed the scheme through a pattern of racketeering activity. Each of the contracts on which the conduit scheme was used was obtained through acts of mail fraud; namely, Kiewit submitted its bid knowing that, if it was the successful bidder, it would be mailed a "Condition of Award" letter which made use of the designated MWBE subcontractors a condition of the contract. Further, Kiewit perpetuated and concealed its scheme by mailing false compliance reports, and obtained final payments by mailing false certifications of compliance.

Plaintiffs assert that Kiewit, through its misconduct, was able to divert to itself profits that should have been earned by legitimate MWBEs; that the conduit scheme gave Kiewit an extra profit margin that it could sacrifice in part in order to underbid competition; and that the scheme was used to discriminate against minorities and women by excluding them from job sites.

The district court dismissed the amended complaint for lack of RICO standing. Because the MWBEs could not set forth a reasonable business expectancy in particular subcontracts, they could not establish that they were injured by reason of Kiewit's purported RICO violation. The district court dismissed plaintiffs' civil rights and pendent state law claim on similar grounds. The plaintiff MWBEs filed a timely appeal from that dismissal.

### STANDARD OF REVIEW

■ Dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) is reviewed de novo. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). In reviewing a 12(b)(6) dismissal, all allegations of material fact in the complaint are taken as true and are construed in the light most favorable to the nonmoving party. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.1989). The decision of the district court may be affirmed on any ground finding support in the record. *Myers v. United States Parole Comm'n*, 813 F.2d 957, 959 (9th Cir.1987).

### DISCUSSION

1. *Jurisdiction for RICO claims seeking equitable relief.*

■ Initially, Kiewit contends that the district court lacked jurisdiction over the

RICO claims for equitable relief. According to Kiewit, the amended complaint asserts that under RICO, 18 U.S.C. § 1964(c), the plaintiffs are entitled to "disgorgement of the profits earned by defendants that should have been earned by plaintiffs." Relying on *Religious Technology Ctr. v. Wollersheim,* 796 F.2d 1076 (9th Cir.1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987), Kiewit argues that disgorgement of profits is an equitable remedy; the district court lacks jurisdiction to award equitable injunctive relief to private RICO plaintiffs under section 1964(c); thus, the district court lacked jurisdiction here.

In *Wollersheim,* our circuit held that injunctive relief was not available to a private plaintiff in a civil suit under RICO. *Id.* at 1077–89. Based upon a thorough review of the language and legislative history of the RICO Act, the court concluded that "Congress did not intend to give private RICO plaintiffs any right to injunctive relief." *Id.* at 1088. The court reasoned that:

> For civil RICO, there are strong indicia of congressional intent *against* any implied injunctive relief remedy. Similarly, there is *no indication* in the language of section 1964 that civil RICO was not intended, as its plain wording states, to limit private plaintiffs only to damages, costs, and fees. Taken together, the legislative history and statutory language suggest overwhelmingly that no private equitable action should be implied under civil RICO.

*Id.*

Significant here, however, is the fact that in *Wollersheim,* the court noted that the complaint also included a claim for money damages under RICO. On that basis, the court allowed that the plaintiffs "apparently satisfie[d] the federal jurisdictional requirements for a civil RICO *damages* action." [1] Similarly, in the amended complaint here, the MWBE plaintiffs also requested "damages according to proof, trebled" under RICO. Thus, without deciding whether the holding in *Wollersheim* would extend to bar the district court from granting the MWBEs' request for disgorgement, the district court had federal question jurisdiction over the RICO claims.[2]

### 2. *Jurisdiction for civil rights claims seeking injunctive relief.*

■ Kiewit contends the district court lacked jurisdiction over the MWBE plaintiffs' Title 42 claims for injunctive relief. Kiewit argues that to assert a claim for injunctive relief under sections 1981, 1982, and 1985, the plaintiffs must have "remedial standing." Specifically, Kiewit asserts that the MWBEs must "adduce a credible threat of recurring injury." According to Kiewit, the burden of establishing this likelihood of future harm rests with the plaintiffs, and is a threshold jurisdictional issue. Kiewit charges that the amended complaint failed to meet this jurisdictional test.

Although Kiewit limited its jurisdictional challenge to the MWBE plaintiffs' claim for injunctive relief under sections 1981, 1982, and 1985, it has broader jurisdictional application. Article III of the United States Constitution requires that a plaintiff make out a "case or controversy" between itself and a defendant if the action is to be heard in federal court. *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). By this requirement, federal jurisdiction is limited to those cases in which an adversarial setting is guaranteed by the parties' "personal stake" in the outcome of the litigation. *Id.*

Recently, the Court summarized the basic principles of Article III standing as follows:

> To establish an Art. III case or controversy, a litigant first must clearly demonstrate that he has suffered an injury in

---

1. Maintaining such an action is of course dependent upon establishing RICO standing, i.e., injury and proximate cause. *See, e.g., Religious Technology Ctr. v. Wollersheim,* 796 F.2d 1076, 1080 n. 6 (9th Cir.1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987).

2. Because of our resolution of the other issues raised in this appeal, we need not decide the significance of *Wollersheim* to the plaintiffs' request for disgorgement.

fact. That injury, we have emphasized repeatedly, must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical. Further, the litigant must satisfy the causation and redressability prongs of the Art. III minima by showing that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision. The litigant must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements. A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.

*Whitmore v. Arkansas*, 495 U.S. 149, 155–56, 110 S.Ct. 1717, 1722–24, 109 L.Ed.2d 135 (1990) (citations and quotations omitted).

In this case, the MWBEs sought damages and injunctive relief. The amended complaint pleaded that the bidding process required successful prime contractors to use its designated MWBEs. Imagineering alleged that it is certified as a WBE to perform fabricated structural metal manufacturing and miscellaneous structural metal work, and that, but for Kiewit's illegal conduct, it would have received a subcontract on the West Seattle Low Bridge project. Similarly, Knighten Brothers alleged that it is an MBE certified to perform excavation work, concrete work and water and sewer pipeline work, and that, but for Kiewit's illegal conduct, it would have received a subcontract on the Cedar Falls Dam project. Also, the amended complaint claimed that the plaintiffs suffered direct injury as a result of the conduit scheme because they were deprived of profits they would have earned on those subcontracts. We conclude that the complaint alleged sufficient facts to confer Article III standing for the MWBE plaintiffs' claims for damages.

In addition to the core constitutional standing test are judicially created prudential limitations, including the "requirement that a plaintiff's complaint fall within the zone of interests protected" by the pertinent law. *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). When injunctive relief is sought, the plaintiff must show "a very significant possibility of future harm in order to have standing to bring suit." *Coral Constr. Co. v. King County*, 941 F.2d 910, 929 (9th Cir.1991) (quotation omitted), *cert. denied*, —— U.S. ——, 112 S.Ct. 875, 116 L.Ed.2d 780 (1992). *See also Kolender v. Lawson*, 461 U.S. 352, 355 n. 3, 103 S.Ct. 1855, 1857 n. 3, 75 L.Ed.2d 903 (1983) (At least when injunctive relief is sought, litigants must offer proof of "a credible threat" of recurrent injury.).

In *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), the plaintiff brought suit under 42 U.S.C. § 1983 for damages and declaratory and injunctive relief against the City of Los Angeles and four of its police officers. In the course of a routine traffic stop, a police officer allegedly put the plaintiff in a "chokehold" without provocation or justification. The Supreme Court reversed our circuit's affirmance of a preliminary injunction and held, *inter alia*, that the plaintiff lacked standing under the case or controversy clause of Article III to seek injunctive relief and consequently the lower courts lacked jurisdiction over the claim for injunctive relief. *Id.* at 105–07, 103 S.Ct. at 1666–68. The Court stated that:

Plaintiffs must demonstrate a personal stake in the outcome in order to assure that concrete adverseness which sharpens the presentation of issues necessary for the proper resolution of constitutional questions. Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.

*Id.* at 101–02, 103 S.Ct. at 1664–65 (citations and quotations omitted).

We conclude that the amended complaint failed to allege sufficient facts to confer

standing for purposes of injunctive relief. The complaint did not allege that the named plaintiffs would suffer the same purported injury in the future: loss of subcontracts due to the awarding of bids to Kiewit.

3. *Jurisdiction for the Washington state law claim seeking the imposition of a constructive trust.*

■ Kiewit contends the district court lacked jurisdiction over the plaintiffs' state law claim for imposition of a constructive trust. Kiewit asserts that because there was no independent basis for federal jurisdiction over the state law claim, the district court should have dismissed it for lack of jurisdiction following the dismissal of the federal claims.

■ Section 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if—the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367. The exercise of pendent jurisdiction to hear state claims is within the discretion of the federal district court. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Nevertheless, in dictum the Court in *Gibbs* stated that "if the federal claims are dismissed before trial ... the state claims should be dismissed as well." *Id.*

■ This instruction, however, is not mandatory and inflexibly applied in all cases. Rather, "[t]he statement simply recognizes that in the usual case in which federal-law claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988). These factors include economy, convenience, fairness, and comity in deciding whether to retain jurisdiction over pendent state claims. *Id.* at 353, 108 S.Ct. at 620. Because the weighing of these factors by the district court is discretionary, *Harrell v. 20th Century Ins. Co.,* 934 F.2d 203, 205–06 (9th Cir.1991), we

review only to determine whether the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. *United States v. City of Twin Falls, Idaho,* 806 F.2d 862, 868 (9th Cir.1986), *cert. denied,* 482 U.S. 914, 107 S.Ct. 3185, 96 L.Ed.2d 674 (1987).

Our circuit frequently has upheld decisions to retain pendent claims on the basis that returning them to state court would be a waste of judicial resources. *See, e.g., Schneider v. TRW, Inc.,* 938 F.2d 986, 994 (9th Cir.1991) (cases cited therein). In this case, the district court had the power to decide the pendent claims, and exercised its discretion to do so. This case has been in federal court for some time now. The district court dismissed the original complaint and granted the plaintiffs leave to file an amended complaint. While the amended complaint included the state law claim for constructive trust, the federal claims were substantial. Under the circumstances, the district court did not abuse its discretion by declining to send this case to state court for a determination of that state law claim.

4. *Dismissal of the RICO claims for failure to state a claim.*

(a) RICO standing

■ The MWBE plaintiffs contend that the district court erred in dismissing their RICO claims. The plaintiffs argue that the amended complaint pleaded injury to their businesses, which is an injury to a business interest. Thus, according to plaintiffs, the court erred when it dismissed the complaint for lack of standing because it failed to establish a property right in the subcontracts plaintiffs allegedly would have received.

Section 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." 18 U.S.C. § 1964(c). The Supreme Court has stated clearly that "[i]f the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in

his business or property, the plaintiff has a claim under § 1964(c)." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985) (predicate acts alleged were mail and wire fraud). In order to state a claim under section 1962(c), a plaintiff must allege the following: 1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity. *Id.* at 496, 105 S.Ct. at 3285 (footnote omitted). "In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Id.*

▉ Although RICO is to be "liberally construed," *id.* at 497–98, 105 S.Ct. at 3285–86, not all injuries are compensable under this section. *Oscar v. University Students Co-operative Ass'n*, 965 F.2d 783, 785 (9th Cir.1992) (en banc), *petition for cert. filed*, 61 U.S.L.W. 3171 (U.S. Sept. 1, 1992) (No. 92–385). Case law in our circuit limits injuries compensable under RICO. *See id.* A showing of "injury" requires proof of concrete financial loss. *Id.* (citing with approval *Fleischhauer v. Feltner*, 879 F.2d 1290, 1299–31 (6th Cir.1989) (plaintiffs under section 1964(c) entitled to recover only for money they paid out as a result of racketeering activity), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 and 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 611 (1990)). *See also Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990) (Actual injury, that is financial loss or injury, is required to recover under RICO.).

As discussed above, the MWBE plaintiffs contend that their injury was not receiving the subcontracts to which they were entitled. At paragraph 32 in the amended complaint, plaintiff Imagineering states that it was deprived of a subcontract on the West Seattle Low Bridge project because the general contract was awarded to Kiewit–

Global. According to Imagineering, the lowest bidder not using a front or conduit was Guy F. Atkinson Construction Company, which had designated them as the WBE on the project. Thus, Imagineering claims that the prime contract should have been awarded to Atkinson, and that it would have received the subcontract.

Paragraph 33 makes a similar claim involving plaintiff Knighten Brothers. On a rebid of the Cedar Falls Dam project, the lowest bidder was Kiewit, which received the contract. Plaintiffs allege that because Kiewit designated a front as the MBE subcontractor, its bid did not meet the set-aside requirements, and it should not have received the prime contract. The second lowest bidder was Morrison–Knudsen, which had designated plaintiff Knighten Brothers as MBE subcontractor. Plaintiffs assert that Morrison–Knudsen should have received the prime contract, and in that event, Knighten Brothers would have had a subcontract.

Although plaintiffs characterize their injury as one compensable under RICO, that characterization must be challenged on several bases. First, the facts alleged do not establish "proof of concrete financial loss," let alone show that money was paid out as a result of Kiewit's alleged racketeering activity. Next, even if the type of injury alleged by the MWBEs could be compensable, it is not at all clear that these MWBEs suffered such an injury. Although plaintiffs assert that if specified contracts had not gone to Kiewit those contracts would have been awarded to the plaintiffs' prime contractors, that cannot be established. Indeed, although plaintiffs challenge the district court's reasoning that the next lowest bidder has no claim to the prime contract as Washington law permits the awarding agency to reject all bids and readvertise,[3] *see* Wash.Rev.Code §§ 47.28.090 &

---

3. In their brief, plaintiffs rely on Seattle Ordinance § 20.46.090 B.1, which provides in part that "bids or proposals not including both minority business enterprise and women's business enterprise participation in an amount which equals or exceeds that required by the bid conditions or request for proposal shall be declared nonresponsive." This section merely sets forth some of the utilization requirements for public works contracts. It does not outline the procedure to be followed when selecting another contractor in the event that the prime contractor selected is unable to comply.

39.19.070, paragraph 33 of their complaint states that:

> The City of Seattle first awarded the Cedar Falls Dam Contract in April 1986 to Morrison–Knudsen, which had designated plaintiff Knighten Brothers as an MBE subcontractor. Kiewit and Global successfully protested this award, and the contract was rebid. On the rebid, Kiewit submitted the low bid, designating Global as an MBE subcontractor.

Even if we assume that the MWBE plaintiffs' prime contractors would have received the contracts *and* they were obligated to award Imagineering and Knighten Brothers the subcontracting work merely on the basis of "designating" them in the bids, there is no guarantee that the WBE or MBE subcontractor chosen would not be substituted during the pendency of the contract. *See* Wash.Admin.Code § 326–30–080.

Finally, the complaint does not allege specific bids submitted by the MWBE plaintiffs that were accepted by the prime contractors. It is impossible to determine from the amended complaint whether the plaintiffs are claiming loss of opportunity to realize profits or loss of specific identifiable profits. Considered as a whole, the amended complaint alleges only a speculative injury, which is not compensable under RICO. Thus, plaintiffs have failed to establish RICO standing; namely that they were injured in their businesses "by reason of" Kiewit's conduct.

**(b) RICO Proximate Causation**

█ The MWBE plaintiffs contend that the district court erred in holding that they could not demonstrate proximate cause. Relying on this circuit's decision in *Securities Investor Protection Corp. v. Vigman*, 908 F.2d 1461 (9th Cir.1990), *rev'd sub nom, Holmes v. Securities Investor Protection Corp.*, — U.S. —, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) and the Supreme Court's decision in *Sedima*, 473 U.S. 479, 105 S.Ct. 3275, they argue that the "by reason of" language of the statute allows RICO claims by plaintiffs who, although maybe not intended victims, were foreseeable victims who were proximately injured by the pattern of racketeering activity.

In *Holmes*, the Supreme Court incorporated the proximate causation element of the Clayton Act into section 1964(c) to hold that a RICO plaintiff must show that his injury was proximately caused by the defendant's wrong. — U.S. at — – —, 112 S.Ct. at 1316–18. The Court reasoned that when Congress enacted RICO it was aware of the interpretation federal courts had given the words of the statute earlier Congresses had used first in section 7 of the Sherman Act, and later in section 4 of the Clayton Act; therefore, Congress must have intended them to have the same meaning courts had already given to them. *Id.* — U.S. at —, 112 S.Ct. at 1317–18.

█ In order to maintain a cause of action under RICO then, the plaintiff must show not only that the defendant's violation was a "but for" cause of his injury, but that it was the proximate cause as well. *Id.* — U.S. at —, 112 S.Ct. at 1317. This requires that there must be a direct relationship between the injury asserted and the injurious conduct alleged. *Id.* — U.S. at —, 112 S.Ct. at 1318. "[A] plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover." *Id.* One principle underlying this requirement is that the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors. *Id.*

Plaintiffs urge this court to interpret the proximate causation requirement liberally. Their argument is as follows:

> As a result of its pattern of mail fraud, bribery and extortion, Kiewit has unlawfully obtained prime contracts. Because Kiewit obtained those contracts through fraud, the contracts should have been awarded to the lowest-complying prime contractors, which had committed to employ plaintiffs as subcontractors. As in *Vigman* ..., plaintiffs were not the direct victims of defendants unlawful ac-

tivities, but their injuries were proximately caused by those activities.

Apparently, plaintiffs also contend a direct relationship existed because the set-aside programs provide MWBEs with a portion of the contract and the attendant profits and Kiewit's conduct allowed it to obtain not only the profits that should have been earned by the lowest complying prime contractor, but also the separate profits that should have been earned by the designated MWBE plaintiffs.

In reversing this court's decision in *Vigman*, the Supreme Court agreed that our circuit properly interpreted section 1964(c) to require proximate causation. —— U.S. at —— n. 11, 112 S.Ct. at 1317 n. 11. It did not agree, however, that the link between the defendant's conduct and the plaintiff's loss could satisfy the direct injury requirement.

The plaintiff in *Vigman* was the Securities Investor Protection Corporation ("SIPC"). It alleged that the defendant conspired in a stock manipulation scheme that disabled two broker-dealers from meeting obligations to customers, thus triggering SIPC's statutory duty to advance funds to reimburse the customers. Assuming, *arguendo*, that the SIPC would be entitled to recover because it subrogated to the rights of customers of the disabled broker-dealers who did not purchase manipulated securities, the Court nevertheless found the link between the stock manipulation alleged and the customers' harm too remote because it was purely contingent on the harm suffered by the broker-dealers. —— U.S. at ——, 112 S.Ct. at 1319. According to the Court, the harm caused by the defendant's acts was insolvency for the broker-dealers, leaving them unable to pay the customer's claims; and the cause of the customer's injuries was the insolvency. It was only the intervening insolvency that connected the defendant's acts to the losses suffered by the customer. *Id.* Consequently, while it appears that but for causation was present, and perhaps it was

foreseeable that the customers would be injured, the direct relationship between the injury and the conduct was missing.

The Court's analysis in *Holmes* dictates a similar result in this case. Assuming the bad conduct by Kiewit deprived the named prime contractors of specified projects, and that in turn foreseeably deprived the MWBE plaintiffs of the subcontracts, "but for" causation appears present. It is much more difficult, however, to take the next step and determine that there exists a direct relationship between Kiewit's conduit scheme and the plaintiffs' failure to earn certain profits on the subcontracts. The direct harm in this case runs to the prime contractors. It was the intervening inability of the prime contractors to secure the contracts that was the direct cause of plaintiffs' injuries. Under *Holmes*, the MWBE plaintiffs are missing the direct relationship needed to show Kiewit proximately caused their injuries.

Additionally, the policy concerns underlying the direct relationship requirement are present here. Because of the indirect nature of the injury it is difficult for the court to ascertain what amount of damage suffered by the plaintiffs is attributable to just Kiewit's conduct, apart from other factors. Also, it may be difficult for the court to apportion damages among the subcontractors and prime contractors without permitting multiple recoveries. Essentially, the rule has more to do with problems of proof than with foreseeability.

Because the MWBE plaintiffs did not adequately allege RICO standing or RICO proximate causation, the district court's Rule 12(b)(6) dismissal of the RICO claims must be affirmed. Plaintiffs' RICO claims were properly dismissed on either ground.

5. *Dismissal of the civil rights claims for failure to state a claim.*

██ On appeal, the MWBE plaintiffs challenge only the district court's dismissal of their 42 U.S.C. § 1981 [4] claim, and only as it relates to the MBE plaintiffs. They argue that the amended complaint ade-

---

**4.** Plaintiffs do not challenge the dismissal of their section 1982 claim in the opening brief. Nor do they rebut Kiewit's contention that this

argument has been waived. *See Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir.1988) (Claims not argued in appellant's brief are

quately pleaded Kiewit's intentional, class based discrimination prohibited under the Civil Rights Act. Plaintiffs argue that they alleged that defendants had two reasons for their actions—one based on race and one based on profit—and the existence of an economic motivation could not cure the purported racial discrimination.

■ Section 1981 provides in relevant part that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." 42 U.S.C. § 1981. The relevant provision in section 1981 extends to private conduct and protects two rights: "the same right … to make and enforce contracts." *Patterson v. McLean Credit Union*, 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989). Proof of intent to discriminate is necessary to establish a violation of section 1981. *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 390–91, 102 S.Ct. 3141, 3149–50, 73 L.Ed.2d 835 (1982). Thus, while the federal rules require only that plaintiffs aver intent generally, Fed. R.Civ.P. 9(b), under section 1981 they must at least allege facts that would support an inference that defendants intentionally and purposefully discriminated against them. *See Patterson*, 491 U.S. at 186–87, 109 S.Ct. at 2377–78; *London v. Coopers & Lybrand*, 644 F.2d 811, 818 (9th Cir.1981).

■ An important purpose of section 1981 is to eliminate race based interference with the right of each citizen to contract. In accordance with this principle, courts have not imposed a privity of contract type requirement that would otherwise protect third parties from section 1981 liability. *See, e.g., London*, 644 F.2d at 817–18; *Woods v. Graphic Communications*, 925 F.2d 1195, 1202–03 (9th Cir.1991); *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906, 913–916 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1514, 117 L.Ed.2d 651 (1992).

Here, the MWBE plaintiffs did not allege that Kiewit refused to enter into a contract with them on the basis of race, or offered

to make a contract only on racially discriminatory terms. Rather, the plaintiffs alleged that Kiewit's acts were committed in order to intentionally deprive them of an opportunity to enter into the subcontracts with the named innocent prime contractors on the basis of race. While these allegations normally may be adequate to state a claim under section 1981, *see London*, 644 F.2d at 818, the claim in this case must fail for other reasons.

We simply cannot know what contract Kiewit prevented the MBE plaintiffs from entering into. Assuming that Kiewit engaged in the conduit scheme, it was done in an attempt to secure the government contracts and the attendant profits for themselves. In each instance there was only one prime contract to be awarded. Obtaining the bid over its competitors necessarily had the effect of preventing other prime contractors from subcontracting the work to its MBEs because there was no contract available. The fact that Kiewit may have acted wrongfully in order to gain that contract, even if it was racially motivated, does not provide a basis for section 1981 liability. Consequently, we must affirm the district court's dismissal of this claim.

6. *Dismissal of the claim for a constructive trust.*

■ Plaintiffs contend that the district court erred when it dismissed their claim for a constructive trust on the profits that Kiewit earned on the wrongfully obtained contracts. The MWBEs argue that they pleaded a claim for constructive trust by alleging that Imagineering would have received a subcontract on the West Seattle Low Bridge project, and Knighten Brothers would have received a subcontract on the Cedar Falls Dam project. According to plaintiffs, a constructive trust is appropriate in this circumstance because Kiewit obtained the profits by virtue of committing a fraud upon the MWBEs.

In Washington, "[a] constructive trust will be found when property is acquired under circumstances such that the holder of legal title would be unjustly enriched at the expense of another interested party."

deemed abandoned.). Further, although plaintiffs do not argue their claim under 42 U.S.C. § 1985 in either brief, they apparently wish to revive the claim in the event this court reverses

the district court's dismissal of the section 1981 claim. As we affirm the court's dismissal of the plaintiffs' section 1981 claim, we need not discuss the section 1985 claim.

**1314**

*Huber v. Coast Inv. Co.*, 30 Wash.App. 804, 638 P.2d 609, 612 (1981). *See also Scymanski v. Dufault*, 80 Wash.2d 77, 491 P.2d 1050 (1971) (A constructive trust was imposed where defendant intentionally interfered with plaintiff's business relationship and thereby acquired property that was the subject of that relationship.); *Viewcrest Cooperative Ass'n v. Deer*, 70 Wash.2d 290, 422 P.2d 832 (1967) (Constructive trust is a proper remedy upon factual situations which constitute something less than actionable fraud.).

While equity compels the imposition of a constructive trust under a variety of circumstances, i.e., fraud, breach of a fiduciary duty, other wrongful acquisition of property, one precondition is present in each factual situation; namely, that the plaintiff establishes he is entitled to the property. *See, e.g., id.* As the foregoing discussion indicates, the MWBE plaintiffs have failed to establish that they were entitled to the profits held by Kiewit. Consequently, we conclude there was no basis for granting such a constructive trust and the district court's dismissal must be affirmed.

AFFIRMED.